### In re J. JUNGMANN, Inc.

(Circuit Court of Appeals, Second Circuit. March 13, 1911.)

No. 206.

1. BANKRUPTCY (§ 440*)—APPEAL AND REVISION PROCEEDINGS—APPEAL OR REVISION AS PROPER REMEDY—"CONTROVERSY ARISING IN BANKRUPTCY PROCEEDING."

A dispute between a receiver in bankruptcy and an outside person as to whether a contract was made between them for the sale and purchase of property of the estate, brought before the bankruptcy court for determination, is a "controversy arising in bankruptcy proceedings," within the meaning of Bankruptcy Act July 1, 1898, c. 541, § 24a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3431), and an order made therein is reviewable by appeal.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. § 440.*]

2. BANKRUPTCY (§ 117*)—SALE OF PROPERTY—ORDER—PROCEEDING AGAINST PURCHASER TO ENFORCE CONTRACT.

An order made by a court of bankruptcy authorizing a receiver to sell property of the estate at private sale in accordance with an offer made therefor by an outside party, whose counsel was present and assented. rendered the transaction a judicial sale as binding on the purchaser as though his offer had been made and accepted and the sale approved by the court after authority to sell had been given, and, if he refuses without cause to carry out his contract, he may be compelled to do so by rule or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

attachment issuing out of the court under whose order the sale was made.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 167; Dec. Dig. § 117.*]

**3.** BANKRUPTCY (§ 117*)—SALE OF PROPERTY OF ESTATE—CONSTRUCTION OF CONTRACT.

Under a contract made with a receiver in bankruptcy for the purchase of property of the estate, including a stock of goods, by which the purchaser agreed to take "all salable merchandise in good condition at the lowest market purchase price," he cannot be required to accept the inventory and prices made by appraisers appointed by the court without having an opportunity to be heard as to the condition and market price of the goods.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 167; Dec. Dig. § 117.*]

Petition to Revise and Appeal from the District Court of the United States for the Southern District of New York.

In the matter of J. Jungmann, Incorporated, bankrupt. Appeal by Hegeman & Co. from an order of the District Court. Reversed.

This cause comes here upon appeal from and petition to revise an order of the District Court, Southern District of New York, which directed Hegeman & Co., a corporation, and certain of its officers, to carry out the terms of the judicial sale, ordered and confirmed "by said court, of certain property belonging to the estate of the alleged bankrupt." The order further provided that, in the event of failure to carry out the terms of said order, they "shall be liable as and for a contempt for their failure so to do."

The corporation J. Jungmann, Inc., had been in business for many years, selling drugs, medicinal articles, and druggists' sundries in a number of different stores in the borough of Manhattan. It became financially embarrassed, and on February 15, 1910, a petition in involuntary bankruptcy was filed in the Southern District of New York and a receiver of its property was appointed. The petition in bankruptcy was contested, and a committee of creditors was chosen at a meeting of creditors, which sought to reorganize the affairs of the alleged bankrupt. Apparently to facilitate their efforts in that direction, the receiver was discharged on March 3, 1910, but the bankruptcy proceedings were not dismissed. After negotiations between the chairman of this committee and the representatives of Hegeman & Co., an offer to purchase certain of the alleged bankrupt's property was made. It reads as follows:

"Hegeman & Co. of New York City, 200 Broadway.

"New York, April 18th, 1910.

"Mr. Jos. Plaut—Dear Sir: On behalf of Hegeman & Co. I offer to take over the Third Ave. store of Dr. Jungmann, same being 25 ft. by 105 ft. deep, and to pay for the store fixtures and prescription books $7,500.00, and also to pay for all salable merchandise in good condition at the lowest market purchase price, excluding goods on hand made and manufactured and put up by Dr. Jungmann. The store is to have 21 (twenty-one) year lease from May 1, 1910; $5,000.00 for the first ten years, and $6,000.00 for the next eleven years, Hegeman & Co. to pay all the taxes and assessments during the life of the lease, and to be subordinated to a first mortgage of $50,000.00.

"For the 42nd Street store we are willing to pay for all the store fixtures, fountain and everything connected with it, and prescription books, $7,500.00 and purchase said store subject to a present lease and sub-letting. Purchase of merchandise of this store to be the same as the purchase of merchandise in 3rd Ave. store. Terms of payment in both cases to be made:

"⅓—Cash.

"⅓—Note, 6 months, @ 5%.

"⅓—Note, 12 months, @ 5%.

"For the purpose of defining merchandise, would say that we consider merchandise to be goods usually sold over the counter, and fixtures to consist of all articles not sold, including prescription books.

"This offer subject to acceptance within three days.

"Possession, the first Sunday following date all legal papers are signed satisfactory to our attorneys.

"Yours truly,                    Geo. Ramsay, Vice President."

On April 21, 1910, upon the petition of certain creditors, a new receiver was appointed, who took possession of all the property of the alleged bankrupt, including that mentioned in the offer of April 18th. On May 6th the court made an order authorizing and empowering the temporary receiver "to sell at private sale the assets and effects of the alleged bankrupt in accordance with the offer of Hegeman & Co."

It is apparent from this offer and from undisputed testimony that, although by acceptance within the three days (or within whatever extended period might be agreed upon) a binding contract might be entered into, much more would have to be done before such contract could be completed. The leases of the two stores stood in the name of Dr. Jungmann. There was a blanket mortgage to one Wyeth of $45,000 covering the Third avenue store and other property. The amount of salable merchandise had to be determined by taking inventories or otherwise, and its "lowest market purchase price" determined in some way. For some three months after May 6th the representatives of the parties were engaged in discussing how these matters should be arranged and in carrying out such arrangements. On August 11th Hegeman & Co. notified the chairman of the creditors' committee that "Hegeman & Co. had ceased to be interested in the Jungmann proposition," and on August 20th counsel for Hegeman & Co. wrote to counsel for the receiver the same effect. Thereupon application was made to the court for an order compelling Hegeman & Co. to carry out the terms of the contract. Such application was heard upon voluminous petitions and affidavits submitted by both sides and resulted in the entry of the order now sought to be reviewed.

Philbin, Beekman, Menken & Griscom (Charles K. Beekman, S. Stanwood Menken, and Morton G. Bogue, of counsel), for appellant.

Thomas & Oppenheimer (Leo Oppenheimer, Charles E. Buchner, and Max Ash, of counsel), for respondent.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). [1] It is contended that this order is not appealable; that it can be reviewed only by petition to revise. The authorities upon this branch of bankruptcy practice are so numerous and there is such conflict between them that it is sometimes difficult to determine within which class a particular order of the bankruptcy court may fall; whether it is a "proceeding of the court of bankruptcy," or "a controversy arising in bankruptcy proceedings." It may be taken as settled that each case is to be determined by its own facts, and that the important consideration is the object and character of the proceeding sought to be reviewed. To us the classification of the order in this case seems plain. If the question were whether or not the bankruptcy court should have directed the sale of the bankrupt's property at some particular time, or in some particular manner—at auction or at private sale—or to some particular individual, or for some particular price, we would have a proceeding in bankruptcy, pure and simple. But in this case substantially the only question raised is whether or not a contract of purchase was ever made. This would certainly seem to be a "controversy in a bankruptcy proceeding" arising between the receiver and

an outside person; the former insisting that the latter made a contract with him, and the latter strenuously denying that any such contract was made. Such a controversy would be justiciable in other courts. The receiver might, if he chose to do so, bring suit in a state court or in the Circuit Court provided there was the requisite diversity of citizenship, alleging the making of the contract and asking damages for an alleged breach of it. Since that is the kind of controversy which has arisen in this bankruptcy proceeding, its decision by the district judge is reviewable by appeal. Mason v. Wolkowich, 150 Fed. 699, 80 C. C. A. 435, 10 L. R. A. (N. S.) 765; Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772.

The district judge found that the written offer concededly made to the committee of creditors was by it accepted within the three days and transferred to the new receiver with the full consent and approval of Hegeman & Co. There are conflicting statements in the affidavits and petitions; but, after a most careful perusal and analysis of them, we are entirely satisfied that this finding is correct. Indeed, there is sufficient in the papers submitted by appellant to show that during the period immediately succeeding the appointment of the new receiver it entered into negotiations with him which contemplated such action on his part as would enable him to carry out the terms of the contract and to give Hegeman & Co. a good title thereunder. We do not hold that these various statements show an estoppel, or anything of that sort, but find in them evidence entirely persuasive to the conclusion that its representatives knew that a contract had been made by offer and acceptance and were concerned merely in making sure that Hegeman & Co. should get a good title to what it had agreed to buy. When the order of May 6th was made, authorizing and empowering the receiver to sell the specified property at private sale in accordance with the offer of Hegeman & Co., its counsel was present. Respondent's papers would indicate that he united in the application, although the order does not recite the fact. An affidavit of the treasurer of Hegeman & Co. asserts that counsel "attended court at request of counsel for receiver to explain the situation to the court and the financial situation of Hegeman & Co."; counsel himself makes no statement as to what took place before Judge Holt on May 5th, although three affidavits by him referring to other matters are found in the record. If there were any question about the acceptance of the offer by the committee within the three days, we should find no difficulty in reaching the conclusion that on May 5th Hegeman & Co. assented to the acceptance of its offer by the receiver, subject only to the qualification that such acceptance should amount to nothing, if the court failed to approve of a sale upon the terms indicated.

[2] We are also satisfied that, by the court's approval of the sale upon the terms offered, the transaction became a judicial sale as fully as if sale had been ordered before any offer were made, and the offer subsequently made had been considered and approved. There seems to be no sound distinction between a sale at auction and a private sale approved by the court, so far as the purchaser's obligation to comply with his bid or offer is concerned. In either case, by voluntarily becoming a purchaser of property sold under order of the court,

he submits himself to the jurisdiction of the court, and when such purchaser refuses without cause to carry out his contract he may be compelled to do so by rule or attachment issuing out of the court under whose decree the sale is had. Camden v. Mayhew, 129 U. S. 73, 9 Sup. Ct. 246, 32 L. Ed. 608; Brasher v. Van Cortlandt, 2 Johns. Ch. (N. Y.) 505; Mason v. Wolkowich, 150 Fed. 700, 80 C. C. A. 435, 10 L. R. A. (N. S.) 765.

It is further contended by the appellant that there is no evidence, except statements in the affidavits of receiver and his counsel, that receiver is in a position or has power to convey the property referred to in the order; and that appellant has never been tendered any documents conveying or purporting to convey a clear and valid title to the property. It should be remembered, however, that ever since August 11, 1910, when its vice president asserted that it had ceased to be interested in the Jungmann proposition, it has uniformly insisted that it never made any contract at all. Of course, if it had made no contract to purchase, all questions as to seller's title would be academic. The affirmance of this order will in no way impair appellant's right to insist upon its objections to the validity of the documents by which the seller may endeavor to carry out the terms of the contract. When application shall be made to punish for disobedience of the order, proof that the receiver has failed to tender what the contract called for will be a complete defense.

[3] In one important particular, however, the order appealed from seems not to be warranted by the proofs. The contract obligates Hegeman & Co. to pay for all salable merchandise in good condition "at the lowest market purchase price"; the order adopts "the inventory and prices made by the official appraisers," and directs Hegeman & Co. to pay "the amount so ascertained by said appraisers." Unless it is settled as a fact, which Hegeman & Co. can no further dispute, that the decision of the appraisers as to inventory and prices is correct, this part of the order is broader than the contract. Of course, under such a contract as this, the unspecified details of items and market prices must be settled in some way; but in whatever way that is done the purchaser must be accorded a hearing and opportunity to review. So far as this record discloses, Hegeman & Co. had no notice of application for the appointment of appraisers, no opportunity to be heard on their selection, no notice of any hearing before the appraisers, no opportunity to introduce evidence showing the condition of any goods (whether "salable" or not) or their market value, no notice of any determination by the appraisers, no notice of any application to the court to approve such determination or any hearing on such application. Apparently upon this important branch of the case it has as yet had no day in court. It may be that as a matter of fact it participated in the appraisement and concurred in the conclusions of the appraisers; but we can determine the validity of this order only upon the record submitted here; and, since the point is raised in the assignments of error and insisted upon on the argument, we must reverse the order.

If in fact they did so participate or had opportunity to participate, of which they did not avail themselves, this reversal will not prevent

the District Court from making a new order requiring Hegeman & Co. to carry out its contract. Or such new order may be made after the quantity of goods and their "lowest market price" shall have been determined at a hearing where Hegeman & Co. have been given full opportunity to be heard.

In one other respect the order is open to criticism. The contract provided for payment one-third cash, one-third 6 months' note, and one-third 12 months' note. The order recites that since the making of the inventories goods have been sold and bought by the receiver—both stores are going concerns—and a referee is appointed to ascertain what amount has been so sold and bought and whether the total value of the merchandise is less at the time of the transfer of possession than that found by the appraisers, such reduction, if any, to be credited to Hegeman & Co. This is a proper provision, but the order further directs that such amount be credited on the notes only; it should be credited in proportions like those named in the contract, one-third on the cash payment and one-third on each of the two notes.

The order is reversed, without prejudice to its re-entry when objections referred to in this opinion are removed.