In re LANE LUMBER CO., Limited.

(Circuit Court of Appeals, Ninth Circuit.    September 8, 1913.)

No. 2,243.

BANKRUPTCY (§ 257*)—SALE OF ASSETS—BID—ACCEPTANCE—WITHDRAWAL.

A bankrupt's trustee having the assets of a lumber corporation for sale, petitioner filed with him two papers entitled "proposals to purchase" in which he proposed to purchase certain property and assets of the bankrupt, subject to the confirmation and approval of the court. After specifically describing quantities of lumber and pieces of real estate, one of the proposals recited that the bid was made as a bid on the property as a whole, and that a deposit of $1,000 was made as evidence of good faith, to be returned in case of nonacceptance. It further provided for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

delivery of abstracts of title to petitioner's attorney by the trustee and for return of such deposit after examination in case the title was unsatisfactory, and, if petitioner should fail to complete the contract on the proposal being accepted and approved by the court, the damage for such failure should be limited to the payments made. The other proposal had reference to timber lands and was practically the same. The trustee petitioned the referee for confirmation of the sale to petitioner, alleging that he believed the "proposals to purchase" should be accepted and the sale confirmed after 10 days' notice to creditors. The referee published notice to creditors "of a proposed sale of the property to petitioner," but 5 days before the day set for the hearing petitioner notified the trustee that he withdrew his proposals and elected not to complete the sale. *Held*, that the proposals were not mere offers which the petitioner could withdraw at any time before acceptance by the trustee but were contracts to purchase based on a sufficient consideration; the trustee having done all that devolved on him to do when he approved the proposals, advised confirmation, and took the necessary steps to that end.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 356, 357; Dec. Dig. § 257.*]

Petition for Revision of Proceedings of the District Court of the United States for the Northern Division of the District of Idaho, in Bankruptcy; Frank S. Dietrich, Judge.

In the matter of the bankruptcy proceedings of the Lane Lumber Company, Limited. Petition by Duval Jackson to be relieved from a bid for the purchase of certain of the bankrupt's property. Denied.

Samuel L. Boyd, as trustee in bankruptcy of the Lane Lumber Company, Limited, a corporation, bankrupt, was duly authorized by the United States District Court in and for the District of Idaho, Northern Division, to sell at private sale all of the real and personal property of the bankrupt subject to the approval of the court. On June 24th Duval Jackson, petitioner herein, filed with the trustee two papers substantially alike, entitled "proposal to purchase" certain property. In them Jackson "proposes to purchase," subject to the confirmation and approval of the court, certain property and assets of the Lane Lumber Company. After specifically describing quantities of lumber and pieces of real estate, one of the offers continues:

"The prices set opposite and several items mentioned in said schedule are not deemed accurate by the undersigned, but the bid is made as a lump bid on the property as a whole.

"For this property the undersigned offers you the sum of $69,519.40, of which sum I deposit with you at this time the sum of $1,000 as evidence of my good faith, to be returned to the undersigned in case you fail to secure the acceptance and confirmation by the court to this proposal. The further sum of $39,-000 is to be paid by the undersigned on July 24, 1912, and the further sum of $29,519.40 is to be paid September 24, 1912, at which time you are to convey to me all the property aforesaid by good and sufficient deeds and instruments of conveyance, and deliver actual possession thereof to the undersigned.

"Upon the making of the payment of the further sum of $39,000 I agree that the insurance now on the said property shall be properly indorsed so as to make the same payable in the first instance to you as trustee in bankruptcy as your interest may appear, in order to protect your estate in the payment of the further sum of $29,519.40; the remaining interest in the insurance to be carried, of course, on my behalf.

\* \* \* \* \* \* \* \* \* \*

"Within fifteen days from this date you are to deliver to my attorneys abstracts of title covering all of the real property herein described, showing unincumbered title clear of incumbrances, save those mentioned herein, for the examination of my attorneys. Should their examination disclose that the title to any of the tracts is defective in so substantial a manner as to af-

fect my willingness to go on with this transaction, I have the right, within, fifteen days after receipt of said abstracts, to require you either to clear said title or to refund me the initial payment, in case you are unable to do so. Should this proposal to purchase be accepted by you and approved by the court, it is with the distinct and express understanding of all parties concerned that the damage for failure on my part to complete the fulfillment of any part of this proposal is to be limited to such payments as have been made."

In the other offer, after a minute description of certain timber lands, which belonged to the bankrupt corporation, the following language appears:

"As an evidence of my good faith in making this bid, I hand you herewith the sum of $1,000 and I offer you for the said timber land the sum of $70,480.60, payable $35,000 on December 24, 1912, and $34,480.60 March 24, 1913, each of said payments to bear interest at the rate of six per cent. per annum from July 24, 1912, interest to be paid at maturity on each payment.

"I have had no opportunity to determine your title to these timber lands, or to determine the quantity of timber upon them, and I am therefore compelled to rely upon the representations contained in the above specifications and the prices set forth in your schedule. It is understood and agreed as a condition of this proposal that I have until September 24th in which to examine the titles and to scale the timber lands in order to determine whether or not the estimates of values comprehended in said inventory are correct, and whether or not the title to said land is as represented in said schedule. If I find it to fail in a substantial particular thereof. I am entitled to have my original payment of $1,000 returned to me on demand on or before December 24, 1912. No trifling variation shall be sufficient to vitiate this proposal on my part.

"At the time of making the last payment, you are to convey to me the whole of the property therein scheduled by good and sufficient deeds and instruments of conveyance, and to deliver to me the right of possession of the whole of said lands and every part thereof save only the property referred to as being in litigation. As to this, quitclaim deeds of your interest will be sufficient.

"Should you fail to accept this bid or fail to have your acceptance confirmed by the court and be thereby not enabled to consummate to the conditions specified in this proposal, then, and in that event, you are to return to me the said sum of $1,000 hereby deposited with you as evidence of good faith.

"Within thirty days from this date you are to furnish abstracts to me showing unincumbered title clear of incumbrances, save those mentioned herein, for the examination of my attorneys. Should their examination disclose that the title to any of the tracts is defective in so substantial a manner as to affect my willingness to go on with this transaction, I have the right within fifteen days after receipts of said abstracts, to require you either to clear said title or to refund me the initial payment in case you are unable to do so. Should this proposal to purchase be accepted by you and approved by the court, it is with the distinct and express understanding of all parties concerned that the damage for failure on my part to complete the fulfillment of any part of this proposal is to be limited to such payments as have been made."

Thereafter, on June 27th, the trustee filed a petition with the referee in bankruptcy praying for confirmation of sale of the real and personal property of the bankrupt to Duval Jackson. The trustee set forth that he believed each of the "proposals to purchase" should be accepted and the sale confirmed after ten days' notice to the creditors, as was required in the order of sale. Thereafter, on June 29th, the referee published a notice to the creditors and other persons interested that the petition of the trustee for approval and confirmation "of a proposed sale" of the property to Jackson would be heard on Monday, July 15th. On July 10th Duval Jackson, who had made the proposals referred to, sent a telegram to the trustee saying:

"I withdraw my two proposals under date of June twenty-fourth, nineteen hundred and twelve, for the purchase of the timber lands, real estate, property and assets of the Lane Lumber Company, Limited, a Corporation, involuntary

bankrupt. All bids or propositions made by me are hereby withdrawn and have also sent you notice to that effect by mail to-day."

On July 15, 1912, before the hour set for the confirmation of the sale, Jackson caused to be filed with the referee in bankruptcy two papers notifying the trustee that he desired to and did withdraw "each and all of the proposals and propositions made in reference to said property and each and every part of the same" and requesting that the amount deposited with the proposals be returned. The referee proceeded to a hearing of the application for confirmation of sale to Jackson and made an order to the effect that, a hearing having been had pursuant to a notice to creditors at which no objections were made "to the sale of the said real and personal property referred to" in the petition of the trustee filed June 27, 1912," the sale of the real estate and personal property referred to, save and except certain logs and lumber, the appraised values of which were to be deducted from the purchase price to be paid by Jackson, was confirmed. The only reason why the sale of all of the property covered by one of the offers was not confirmed in strict accordance with the offer of Jackson was that, in order to meet a payment which would become due soon after the sale by the estate of the bankrupt, it was necessary for the trustee to procure funds out of the only resources to be availed of by sale of certain property. It is found that Jackson knew that on August 1st such payment would be due, and that the trustee had no money on hand with which to pay the indebtedness, and that the trustee was relying upon the fulfillment of the purchase by Jackson in order to raise money to meet the payment. Thereafter the referee ordered the trustee to pay Jackson the $2,000 theretofore deposited. On review, the order of the referee was reversed by the District Court, whereupon in due course the case was brought to this court by a petition asking that the decree of the District Court be set aside.

Frank W. Reed and Eugene V. Boughton, both of Cœur d'Alene, Idaho, and Clay H. Alexander, of Kansas City, Mo., for petitioner.

E. N. La Veine, of Cœur d'Alene, Idaho, for respondent.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). Correct solution of this case is dependent upon the construction of the writings referred to in the statement. We must look for the real intent of the parties, as evidenced by the language they have used, and in that way arrive at a proper legal effect.

The contention of the petitioner is that he had a right to withdraw his offers or bids at any time before the acceptance thereof by the trustee because they were merely offers to contract in the future. But we must hold otherwise.

Jackson accompanied his proposal with the money transmitted to the trustee as an evidence of good faith in making his bid and in his offer went into detail sufficiently far to specify conditions with respect to the title to the property, times, and manner of payment. Furthermore, to protect himself against failure to complete fulfillment of any part of his bid, he limited the damage to the amount of such payments as he had made when he offered to buy from the trustee. He made a bid by which he fairly agreed to take the property described, provided always the conditions with respect to title could be fulfilled by the trustee. It is of no controlling force that he called his offer a proposal to purchase. We must look into all the provisions of the writings. Doing so, it is plain that his payment of $2,000 was intended to be applied on the purchase price of the prop-

erty with the understanding that, if he should fail to complete the purchase, no damages could be recovered beyond the limit of the sum paid to the trustee.

It clearly appears that, after due notice to all creditors, the court made and filed an order "approving and authorizing private sale of the real and personal property by the trustee, subject to the approval of the court after due notice to all creditors." Again, after he had received the bids of Jackson, in submitting his action to the court for confirmation, the trustee set forth:

"That, in order to deliver said property to the purchaser, it is necessary * * * to have given ten days' notice as required in the order of sale herein, given to all the creditors, so that the creditors herein may determine whether or not they desire (for) said sale to be confirmed by the court."

It was also set forth that much of the property was deteriorating in value by being kept, and that great expense would attach unless "said sale" was confirmed and the property converted into money.

As we read the several writings by the parties, we gather that it was the intention of the trustee to sell to Jackson and that it was the intention of Jackson to buy in accordance with his offer and under the conditions named therein. The trustee seems to have done all that devolved upon him to do. He approved of the bids of Jackson, set forth the offers in his petition to the court, and advised confirmation of sale by the court, and acted in all respects with prompt and careful regard for the interests of the estate. Mason v. Wolkowich, 150 Fed. 699, 80 C. C. A. 435, 10 L. R. A. (N. S.) 765. As was said by the learned judge of the court below:

"There was an acceptance and a partial performance on the part of the trustee; the estate parted with a consideration. Having induced the officers to refrain from looking elsewhere for a purchaser and to incur expenditures in reliance upon his promises, Jackson cannot be heard to say there was no consideration."

The circumstances connected with the whole transaction made the relationship one of contract between the trustee and Jackson. In re Jungmann, 186 Fed. 302, 108 C. C. A. 380. If the offer was one which could be withdrawn by Jackson at any time, it would have been wholly unnecessary to have made a cash deposit or to have entered into the detail employed in the written bids. While the sale to Jackson was not confirmed as to a part of the property included in one of the offers, it would have been confirmed in strict accord with the offer of Jackson, had it not been for Jackson's refusal to proceed to carry out his agreement. This feature of the case, however, loses importance, because the record shows that Jackson gave his notice of withdrawal to the trustee and the referee before the hour for hearing the petition for confirmation and with knowledge of the financial condition of the estate. His position was that he would not complete the purchase and desired to withdraw his offers; but, as it was his unwillingness to perform which created the situation, the trustee was not obliged to go through the useless formality of obtaining confirmation of the sale in strict accord with Jackson's offer.

Holding that there was a contract and that Jackson has no right to a return of the money, the decree of the lower court is affirmed.