In re HOLLINGSWORTH & WHITNEY CO.  HOLLINGSWORTH & WHIT-
NEY CO. v. BOSTON et al.  In re SCHMICK HANDLE & LUMBER CO.

(Circuit Court of Appeals, First Circuit.  June 11, 1917.)

Nos. 1229, 1241.

**1.** BANKRUPTCY ⬦117(1)—AGREEMENTS WITH RECEIVERS—CONSTRUCTION.

Where a claimant of timber, also claimed by the receivers of a bank-
rupt, agreed to dispose of it and pay over the net proceeds to the receivers
or their successors, to hold as officers of the bankruptcy court, the agree-
ment must be treated as an agreement with the court; the receivers
being officers thereof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 167.]

**2.** BANKRUPTCY ⬦288(1)—COURTS—JURISDICTION.

In such case, while the agreement remains in force, the bankruptcy
court may order it complied with by either party thereto, without an in-
dependent suit brought for such purpose.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447.]

**3.** BANKRUPTCY ⬦288(1)—COURTS—JURISDICTION.

In such case, the claimant, having made such agreement, could not
contend that the court had no jurisdiction to require the payment to be
made, or that it had no jurisdiction to require such payment by summary
order.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447.]

**4.** BANKRUPTCY ⬦117(1)—COURTS—JURISDICTION.

Where the receivers of a bankrupt and a claimant of property entered
into an agreement for disposition by the claimant and delivery of the net
proceeds to the receivers, neither party could abrogate the contract with-
out the court's approval, and hence the receivers' failure to comply with
a demand of the complainant concerning the contract could not release
the claimant.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 167.]

**5.** BANKRUPTCY ⬦288(1)—COURTS—JURISDICTION.

Claimant and the receivers of a bankrupt corporation both claimed
logs cut on the land of claimant, and for the protection of the property
entered into an agreement that claimant should dispose of the logs and
pay over the net proceeds to the receivers or their successors, to be held
as officers of the bankruptcy court, subject to the final judgment of the
court or courts having jurisdiction of the question of ownership, which
was to be submitted as soon as possible.  It was further agreed that
nothing should prejudice any claim of ownership of either party, but that
such claim should be determined by the court or courts having jurisdiction
in all respects as if the agreement had never been made.  *Held*, that the
contract did not take the case out of the principle that possession law-
fully obtained by officers of the bankruptcy court of property claimed by
them draws to that court jurisdiction of all questions of title thereto or
liens thereon, and hence the bankruptcy court could dispose of the ques-
tion of ownership.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447.]

**6.** BANKRUPTCY ⬦288(1)—COURTS—JURISDICTION—PROCEEDING—NATURE OF.

In such case, where the bankruptcy court merely directed the claimant
to answer the trustees' petition, in which they set up their claim to the
proceeds, and there was nothing which necessarily prevented the claim-
ant from asking leave to present its claim by an independent suit, which
was not done, the issues being referred to a special master, the proceed-

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
242 F.—48

ing was in substance a plenary suit, and not a summary proceeding, which is heard by the referee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447.]

7. BANKRUPTCY ⬅️288(1)—COURTS—JURISDICTION.

In such case, there was nothing in the agreement preventing the bankruptcy court from determining the questions at issue by summary proceedings, although the proceedings should be of such character as to secure to each party a full opportunity to present his case on the merits.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447.]

8. BANKRUPTCY ⬅️288(1)—COURTS—PROCEEDINGS.

In such case, where claimant did not, by revisory petition at the time of submission of the case to the master, raise that question, claimant cannot, its substantial rights not appearing to have been violated, obtain a reversal because the methods of the plenary suit were not more strictly observed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447.]

9. BANKRUPTCY ⬅️288(1)—COURTS—JURISDICTION—CONTROVERSY.

In such case, where full opportunity was afforded both parties for presenting their proofs, and the matter was disposed of on the merits, the fact that the trustees' petition must be deemed a general denial of the claimant's answer, in order for it to be said there was made by the petition and answer, will not necessitate a reversal.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447.]

10. PRINCIPAL AND AGENT ⬅️129—AGENT'S CONTRACTS—RIGHTS OF PRINCIPAL.

Where a bankrupt ratified contracts of its agent, who contracted in his own name, and the other party recognized the bankrupt as the real party in interest, the bankrupt, though not an ostensible party, was entitled to all the rights under the contract which the agent would have.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 451–457.]

Appeal from and Petition for Revision of Proceedings in the District Court of the United States for the District of Maine; Clarence Hale, Judge.

In the matter of the bankruptcy of the Schmick Handle & Lumber Company. The claim of the Hollingsworth & Whitney Company to a fund in possession of Frank E. Boston and others, trustees, was denied (233 Fed. 446), and the claimant appeals and petitions to revise. Petition to revise dismissed, and decree appealed from affirmed.

John E. Nelson, of Augusta, Me. (Andrews & Nelson, of Augusta, Me., and Butler & Butler, of Skowhegan, Me., on the brief), for petitioner and appellant.

William R. Pattangall, of Augusta, Me. (Thomas Leigh, of Augusta, Me., on the brief), for respondents and appellees.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

DODGE, Circuit Judge. The three appellees are the trustees in bankruptcy of the Schmick Handle & Lumber Company, a Maine corporation adjudged bankrupt in the Maine District Court, February 6, 1914, upon an involuntary petition filed January 20, 1914. They were

appointed receivers of the bankrupt estate January 22, 1914, acted as such until after the adjudication, and were then duly chosen and qualified as trustees.

The appellant, Hollingsworth & Whitney Company, a Massachusetts corporation, was the owner of timber lands in Maine. On Bald Mountain township, belonging to it, there were lying in the woods, when the above bankruptcy petition was filed, certain hardwood logs which had been cut under a contract further considered below, dated November 15, 1912, between it and Wilson E. Schmick. These logs and the right to remove them were claimed by the receivers as belonging to the estate in their custody.

The questions here presented require us, in the first place, to determine the true meaning and effect of a written agreement under seal between said receivers and said company, dated February 12, 1914, which appears in full in the opinion of the District Court. 236 Fed. 446, 448. After reciting that "unless the logs are forthwith hauled from the woods and manufactured into lumber they will become a total loss," the parties mutually stipulated and agreed in substance as follows:

(1) That the company should advance the funds required to discharge labor liens on the logs, haul them off and load them on cars; and should thereafter sell them at the best obtainable prices.

(2) That the question of their ownership should be submitted as soon as possible, "for determination by the court or courts having jurisdiction thereof," and that the net proceeds of the sales of the logs as above when received by the company should be paid over by it "to said receivers or their successors in authority, and be held in their hands as officers of the bankruptcy court, subject to the final judgment of the court or courts having jurisdiction of the premises."

(3) That nothing in the agreement should "in any way prejudice any claim of ownership, right or title of either party * * * in or to said logs or the proceeds of the same * * * but said claim of ownership shall be determined by the court or courts having jurisdiction of the premises in all respects as if this agreement had never been made."

It is stipulated for the purposes of the present appeal that this agreement was approved by the District Court, and that the trustees in bankruptcy were duly substituted therein in the place of the receivers originally parties thereto.

The company had sold the logs and received the proceeds thereof as contemplated by the agreement, but had not paid said proceeds to the receivers or trustees; whereupon the trustees, by a petition in the bankruptcy case filed October 31, 1914, asked that the company show cause why it should not be ordered to make such payment to them, in accordance with the agreement, "as officers of the bankruptcy court, to hold subject to the final judgment of the court as to the ownership of said logs."

Notified to show cause as above, the company appeared specially on the day fixed for hearing said petition, and moved to dismiss it, on the alleged ground:

"That this court has no jurisdiction of said matter, and has no right or authority to make a summary order for the turning over of [said funds], nor has it any jurisdiction over the subject-matter mentioned in said petition and no jurisdiction summarily to grant the relief therein demanded, because it says that [said company] is now and always has been an adverse claimant of the subject-matter of the controversy, and that proceedings, if any, against it seeking the relief prayed for in the petition must be by plenary action and not by summary proceedings."

The company's motion to dismiss was denied on the same day (November 9, 1914), and on November 21, 1914, it answered the above petition (expressly reserving its objection that the court had no jurisdiction over it, or over the subject-matter of said petition). The material allegations in its answer were that the possession of and title to the logs and their proceeds were and had always been in the company, which asserted, as an adverse claimant, that the relief sought by the petition must be by plenary action, instead of summary proceedings. Further allegations in the company's answer were that it had, on April 2, 1914, notified the trustees of its readiness for a hearing according to the terms of the agreement of February 22, 1914, and asked them to join in a request to "the proper court" according to said terms, that the trustees had refused to do so, and had thereby broken said agreement, leaving it no longer bound to carry out its part thereof.

The District Court ordered, on December 5, 1914, that the company pay over the proceeds in question to the trustees forthwith, as officers of the bankruptcy court, and that the trustees hold the proceeds so paid over, as such officers, "subject, however, to final determination of all questions as to the legal ownership of the same, in accordance with (the agreement of February 12, 1914), which said agreement was duly approved by the court."

[1-3] The company contends that specific performance of said agreement could not be enforced by summary process in the bankruptcy court. But the agreement was unmistakably made with officers of that court appointed by it in a pending bankruptcy case, and it can only be regarded as made and approved by the court for the purposes of that case. An agreement so made is to be regarded as an agreement with the court wherein the case is pending. Walton v. Johnson, 15 Sim. 352; American, etc., Co. v. Baltimore, etc., Co., 124 Fed. 866, 877, 62 C. C. A. 397. And while it remained in force, the court with whom it was so made could order it complied with by either party thereto, without an independent suit brought upon it for that purpose. Walton v. Johnson, 15 Sim. 352. The principles applicable are those according to which it is held that a bankruptcy court may enforce by its order completion of a contract for sale of property belonging to the estate, made with its receiver. Mason v. Wolkowich, 150 Fed. 699, 701, 80 C. C. A. 435, 10 L. R. A. (N. S.) 765; Re Jungman, 186 Fed. 302, 306, 108 C. C. A. 380. By contracting with the receivers, the company became a quasi party, instead of a stranger to the record, and subjected itself, for the purposes of the contract, to the orders of the court. After agreeing to pay over the proceeds to the court's officers, it could neither say that the court had no jurisdiction to require

such payment to be made as agreed, or that it had no jurisdiction to require such payment by summary order.

[4] Since neither party to such a contract could abrogate it or release itself or the other party therefrom without the court's approval, the objection set up by the company in its above answer that it had been released by the receivers' failure to comply with a demand addressed to them in a letter dated April 12, 1915, need not be further noticed.

We find no error in the order made December 5, 1914, nor in any of the proceedings prior thereto. No determination of the further question whether said proceeds belonged to the bankrupt estate or to the company was involved therein or prejudiced thereby. Nor had any particular method been up to that time prescribed for the determination of said question.

Coming next to the proceedings which followed said order, $16,-128.86 was paid over to the trustees in compliance therewith on December 24, 1914, which sum they have since held in their official custody, and is apparently conceded to be the true amount of net proceeds realized from the above sales of the logs by the company. The next step was a petition by the trustees filed in the bankruptcy case May 12, 1915. In this they represented that they had requested the company to "present to this court" any claim to said fund which it had or claimed to have; but said request has not been complied with. They asked the court to order the company so to present any such claim, to fix the time within which it should be so presented, and in default of such presentation to order any and all claims by the company to said fund forever barred. The court set a date for hearing the petition and ordered notice to the company of such hearing.

May 28, 1915, the company, appearing under protest, moved to dismiss said petition, alleging that the court "had no jurisdiction of said matter" and had "no right or authority to make" a summary order such as the petition sought. It further alleged, as above, that it held the logs as adverse claimant and was still adverse claimant of their proceeds. It denied that the proceeds constituting the fund in the trustees' hands was subject to the court's jurisdiction as property of the bankrupt estate. It averred that it had not, by the agreement of February 22, 1914, consented to the court's jurisdiction in summary proceedings, but only to a plenary suit for the proper determination of the title to the fund; also that, in the absence of said agreement, there could have been no resort to summary proceedings for the purpose sought, and that the company was prejudiced by the trustees' resort to such proceeding contrary to the terms of said agreement. It submitted that the court could not let the trustees take the proceeds under said agreement and then permit further proceedings to be taken by them in violation of it.

This motion to dismiss was heard and denied by the court May 28, 1915, and on the same day the company was ordered to answer the petition. In its answer, filed accordingly July 5, 1915, it again asserted that the court "had no jurisdiction over it or over the subject-matter" of the petition. It repeated, under the heading "Answer in Lieu of Demurrer," the same objections in substance as had been made

in its motion to dismiss; and, under the heading "Answer," it alleged that it had requested the trustee to join it "in petitioning the proper court" to hear and determine the matters at issue according to the agreement, but the trustees had refused to do so in violation of said agreement. Then followed, under the heading "Further Defense and Claim of Ownership," allegations of the facts whereon the company based its claim that the logs were its property and not the bankrupt's when the bankruptcy proceedings were begun, with references to annexed documents relied on in support of said allegations.

With regard to the above orders of May 28, 1915, the first objection to be considered is the company's denial of jurisdiction in the court either over it or over the subject-matter of the trustee's petition then before it.

To the extent that said petition sought compliance by the company with the terms of the agreement it had made with officers of the court, for the purposes of the case wherein they had been appointed, it is clear from what has been said that no such denial of jurisdiction can be maintained. It was for the court to determine the proper construction of such an agreement, and to require performance by the company of any undertaking which it found the company to have thereby assumed. The only question here open to the company is as to the true meaning of the agreement which the trustees sought to enforce.

[5] The company contends that the court erred (1) in holding that the agreement required it to submit its claim to the proceeds for determination by the bankruptcy court; (2) even if such submission was required, in not holding that the agreement entitled it to have the merits of said claim determined in plenary instead of summary proceedings.

(1) The "questions" to which the agreement refers are questions of title to the property therein described, custody whereof was thereby expressly given to officers of the bankruptcy court, claiming said property as part of the estate in their charge. They were to keep it in their possession pending the determination of said questions, which by the express terms of the agreement were to be determined "as between said receivers or their successors and said * * * company, and any other party or parties." The principle that possession lawfully obtained, by officers of the bankruptcy court, of property claimed by them, draws to that court jurisdiction of all questions of title thereto or liens thereon, is so well established that we must regard it as recognized and assumed by the parties for the purposes of their agreement, unless clear indications of a contrary intent can be found in its terms. We find no such indications in the words "court or courts having jurisdiction," which occur three times in the agreement; these are adapted to provide for the case of an appeal by either party from an adverse determination. If the bankruptcy court was to have possession of the property, it thereby became so obviously the "court having jurisdiction" of the questions to be determined as to render the supposition unreasonable that determination by some other court was contemplated. We cannot suppose it intended by the agreement that the officers of

that court were to bring against the company, either a suit in a state court or a suit based on diverse citizenship in the District Court, to recover money already in their possession. And if it was intended that the company should be left free to bring any such suit against them, the period intervening between December 24th, when the money was paid over to them, and May 12th, when the trustees' petition was filed, would hardly have been allowed to pass without any steps taken in that direction. The provision in the concluding paragraph of the agreement, that the respective claims of ownership should be determined "in all respects as if this agreement had never been made," are relied on; but these words are part of provisions that neither party's claim of title or ownership should be in any way prejudiced by anything contained in the agreement, and we understand them as referring at most to the method of determination which the bankruptcy court was to follow, not as clear indications that determination by some other court was intended. We find no error in the order made on May 28, 1915, so far as it required presentation of the company's claim for determination by the bankruptcy court.

[6] (2) That order went no further than to direct the defendants to answer the trustees' petition of May 12th. It did not require them to present their claim in any particular manner, nor did it prescribe any particular method for the determination thereof. In the petition which it directed the company to answer, the trustees had done no more toward presenting their own claim than allege the fact that they claimed the logs and their proceeds, for the estate. This cannot be called a resort to summary process for determination of the title. It was not under the compulsion of any order of court that the company presented its claim as it did, by allegations in its answer. We find nothing in the court's order which would have prevented it from filing an independent petition in the bankruptcy case for repayment of the money to it, had it chosen so to present its allegations and claim. The allegations of such a petition would have called for an answer in due form by the trustees, and for determination of the issues raised by such pleadings, upon proofs to be heard either by the court or a special master, or by a jury upon request therefor approved by the court. If said issues were to be determined by the bankruptcy court, the company could not insist, and it has not insisted, that it was entitled to jury trial as of right. Nor did the court's order necessarily prevent it from asking leave, in the answer it was ordered to file, to present its claim by an independent suit against the trustees in the District Court for the determination of the questions raised in the bankruptcy proceedings. It complains, in its tenth assignment of errors, that the court erred in holding, after the filing of the answer wherein it presented its claim as above, and hearing thereon, that the court had jurisdiction to proceed to determine the title to said fund by summary proceedings on motion to show cause; but the record does not show that the court did in fact so hold at the time. The next step taken, according to the record, was an order by the court, October 16, 1915, that the issue made by the trustees' petition and the above answer thereto be referred to a special master to take testimony concerning the same and report

it to the court with findings of fact and conclusions of law thereon.. The company thereupon proceeded to the hearing so directed, without then objecting that it was not according to the agreement, or raising any objection at all to the above order of reference made October 16,. 1915. A hearing before a special master under such an order of reference, upon pleadings so raising the issues to be·determined, was not in the strict sense a "summary proceeding on motion to show cause," such as is ordinarily heard by the referee before whom the case was pending, subject to review by the court. It was in substance a plenary suit, as In re McMahon, 147 Fed. 684, 77 C. C. A. 668, so far as the pleadings and proofs were concerned, and before the court, not before the referee.

[7] There being, as we hold, nothing in the agreement to prevent the bankruptcy court from determining the questions at issue, we agree with the opinion later expressed by the District Judge (June 16, 1916),. that it might properly determine them by summary proceedings. It was necessary, however, that the proceedings should be such in character as secured to each party a full and fair opportunity to present his. case on the merits.

[8] If the District Court was wrong in sending the case to a master as above, the company could have had the error corrected by a revisory petition at the time, and the expense and delay involved in the proceeding before the· master and upon his report would thus have been avoided. Instead of taking such a course, and, so far as the record shows, without then suggesting any specific objection to the order of reference, the company submitted its proofs and arguments before the master, as did the trustees theirs, and was thereafter heard, as were the trustees, by the court on the question of confirming the master's. report. Unless the method followed in determining the issues dealt with in said report appears to have deprived the company of some substantial right, we cannot consider ourselves obliged, under the circumstances, to reverse the result reached in order that said issues may be retried, merely because of the fact that the methods of a plenary suit were not more strictly observed. See Re Howard Laundry Co., 203 Fed. 445, 448, 121 C. C. A. 555; Salsburg v. Blackford, 204 Fed. 438, 122 C. C. A. 634. The further burden which such a course would impose upon the parties and the further delay in settling the estate would be very considerable, and without substantial benefit to any one.

[9] The record fails to show that full opportunity was denied the· company, in any material respect, for presenting the merits of its case. It is true that only by regarding the trustees' petition of May 12, 1915, as having amounted to a general denial of the allegations made in that part of the company's answer whereon it based ·its claim of ownership, can it be said that issues regarding said claim had been made· by said petition and answer. But this is an objection not taken by the· company at the time, nor is it suggested, nor does it appear that either party, or the referee, or the court were ever at any loss to know what said issues were. Full opportunity was afforded both parties for presenting their proofs. The evidence heard by the master was volumi--

nous and it was reported in full to the court, with his findings and conclusions, in all respects as it would have been had the pleadings relating to the company's claim been more regular in form. We cannot doubt that the form in which the case is here presented brought it before the District Court and now brings it before us, upon the merits, as fully and completely in every substantial respect as it could have been brought by any other method. We hold, therefore, that the method pursued in determining the questions between the parties was in substantial compliance with their agreement, and involved no reversible error on the part of the court.

[10] Coming to the merits of said questions as now presented by the evidence as reported by the master, we find no reason for disagreeing with the results reached by him and adopted by the court. There was evidence sufficient to support his findings that Wilson E. Schmick was, throughout the transactions with the appellant company relating to said logs, the agent for the bankrupt, Schmick Handle & Lumber Company, which adopted and confirmed his acts therein; that said bankrupt, and not said Schmick individually, was the real principal with which the Hollingsworth & Whitney Company dealt, although under written agreements executed by him individually, said bankrupt having been recognized by it as such principal, long before the attempted transfer of the logs to it on January 16, 1914, which the trustees were seeking to avoid. The conclusion is therefore justified that the logs became the bankrupt's property as soon as they were cut; that said attempted transfer was the bankrupt's act, done within four months of its bankruptcy under circumstances rendering it a preference voidable by the trustees; and that the proceeds in their hands are part of the bankrupt estate. We find no error in any of the conclusions of law reported by the master, nor in any of his rulings upon evidence offered before him.

There are 81 assignments of error in all, and all are sufficiently disposed of by what has been said above, which also warrants the conclusion that the questions raised by such assignments may properly be determined upon the appeal, and not upon the petition to revise, also pending.

In No. 1229 the petition to revise the action of the District Court in the matter of law is dismissed, without costs.

In No. 1241 the decree of the District Court appealed from is affirmed, and the appellees recover their costs of appeal.