**In re ROCKHILL.**

**No, 1237.**

District Court, D. New Jersey.

March 26, 1947.

Samuel D. Lenox, of Trenton, N. J., for respondents.

Perlman & Lerner, and Sol Phillips Perlman, all of Trenton, N. J., for trustee.

FORMAN, District Judge.

The trustee herein, Albert B. Kahn, instituted an action in the Court of Chancery of New Jersey to set aside as fraudulent, conveyances made to the wife of the bankrupt, Marion L. Rockhill. The bankrupt and his wife asserted in their defense that the said properties were purchased with funds which did not belong to the bankrupt, but were her property. On the eve of the trial of the case in the Court of Chancery and after considerable negotiation the trustee reported an offer of $700 from the bankrupt and his wife in full settlement of the trustee's claim against them. By petition, filed with the Referee in Bankruptcy, he reported such a settlement to be, in his belief, in the best interests of the estate and recommended that the compromise offer should be accepted. He petitioned for a meeting of the creditors to consider the compromise on the terms expressed above.

Accordingly, a meeting was called pursuant to appropriate notice given by the Referee. The offer was presented and no objection was made to it. In consequence an order was entered by the Referee in which the trustee "was authorized to settle and compromise said controversy with the bankrupt and Marion L. Rockhill, his wife, for the sum of $700 * * *".

The money was not paid and the trustee petitioned that an order be made directing the bankrupt and his wife to pay it within a specified period of time. This was granted and the Referee made an order directing them to pay the money within ten days from the date of service upon them of the order. They continued to decline payment and the trustee further petitioned the Referee to order the bankrupt and his wife to show cause why they should not be adjudged in contempt. Such an order to show cause was granted and argued in full before the Referee. The respondents, represented by Samuel D. Lenox, gave the following specific reasons for justifying their refusal to comply with the Referee's order:

1. That before the meeting of the creditors to consider the offer it was withdrawn.

2. That the bankrupt under no circumstances can be said to be in contempt because he did not make the offer.

3. That certain of the conditions under which the offer was made by the respondent, Mrs. Rockhill, were not fulfilled. They are that the Hovarth judgment against the bankrupt was to be released; that the judgment against the bankrupt's brother Edward Rockhill, in the Horvath case, was to be released; and that the bankrupt was to be given his discharge in bankruptcy.

It appears that the bankrupt was defendant in a suit brought by Julia and Mathew Horvath against him in 1940 in which a judgment was taken in the sum of $6,375 and costs. This suit was begun by a capias and James R. Rockhill and Edward I. Rockhill gave a recognizance for the appearance of the bankrupt in that cause. The attorneys for the trustee, Perlman and Lerner, represented the plaintiffs in this action. This bankruptcy proceeding was commenced some years later in 1944 and the judgment and bond are listed in the bankrupt's schedules in this cause by his then attorney, Kenneth J. Dawes, who also represented them in the Chancery Court action.

It is represented by the respondents that they were called to the office of Mr. Dawes, when the trial of the trustee's action was imminent. It is their contention that Mr. Dawes, in their presence, called the trustee, Mr. Kahn, who is represented by Mr. Perlman of the firm of Perlman and Lerner, the same counsel who represented the plaintiffs in the Horvath case. This telephone conversation resulted in a negotiation of the proposal to settle the Chancery Court action upon the payment of $750 by Mrs. Rockhill, $700 of which was to be paid to the trustee and $50 was to be a counsel fee for Mr. Dawes.

Mr. Dawes testified that he talked with both Mr. Kahn, the trustee, and with Mr. Perlman concerning this settlement. His testimony is confusing as to what was said by him to them but he told either one or both that he wanted to "buy peace" for his clients and to exchange releases, by which he said that he meant releases of the Horvath judgment. These, of course, could only come by way of Mr. Perlman, who represented the plaintiffs in that case.

Apparently the respondents were not particularly satisfied with the services of Mr. Dawes in this direction for some time afterwards, having consulted Mr. Lenox about some of Mrs. Rockhill's personal legal affairs, they also consulted him about the settlement then pending. It was the advice of Mr. Lenox that Mrs. Rockhill should write the following letter to Mr. Dawes:

"535 Willow Street
Bordentown, N. J.
May 10, 1944

Kenneth J. Dawes, Esq.
Broad Street Bank Bldg.
Trenton, New Jersey

My dear Mr. Dawes:

I have just received a notice from Charles H. Weelans dated April 27, 1944, relative to the meeting of creditors in my husband's bankruptcy to consider the $700.-00 offer in the Chancery case instituted by Mr. Kahn as Trustee against my husband and myself.

I am very much disturbed by the wording of Mr. Weelan's notice. You will note in the second paragraph that there is mention made of 'alleged fraudulent conveyances'. You understand, of course, that both Fred and I deny definitely that there were any fraudulent conveyances made as alleged in the Chancery proceeding and I certainly have no intention of offering $700.00 in settlement of the Chancery suit unless there is a definite commitment in writing by the Trustee to the effect that his investigation in connection with the Chancery suit has convinced him that there were, in fact, no fraudulent conveyances as alleged in his bill of complaint, and that neither he nor any of the creditors in my husband's bankruptcy will make any effort to interpose an objection to my husband's discharge in bankruptcy on the ground of any fraudulent conveyance either as alleged in the bill of complaint on file or with respect to any other properties which I may own.

I feel, therefore, that I must withdraw my offer of $700.00 in settlement of the Chancery case until Mr. Kahn as Trustee acknowledges in writing that his investigation discloses no evidence of any fraudulent conveyance as alleged in his bill of

complaint and that he also agrees that he will not interpose any objection to my husband's application for discharge in bankruptcy on the ground of any alleged fraudulent conveyances or on any ground whatsoever. Secondly notice should be given to the creditors of the bankrupt estate that my offer to settle the Chancery matter is made with the understanding that no creditor of the estate will interpose any objection to my husband's discharge in bankruptcy.

Let it be understood, therefore, that I have definitely withdrawn my offer to settle the Chancery case for $700.00 until the foregoing conditions are complied with. I certainly have no intention of making any admission of a fraudulent conveyance by settling the Chancery suit as proposed. In fact, both my husband and I feel that we would be better satisfied to try the Chancery case in the Chancery Court because we know we will be successful in that matter as we were in the suit brought by the Trustee against my mother-in-law.

I am sending a carbon copy of this letter to the Trustee and to Mr. Weelans, the Referee. Will you kindly see if the Trustee and creditors are agreeable to the provisions which I have stated above, in which event I will reinstate my offer.

Very truly yours,
(sgd) Marion L. Rockhill"

This letter was delivered by hand by Mr. Rockhill and copies were mailed to the Referee and the trustee.

Nothing further was done in the matter and the meeting of creditors was held. It was attended by the respondents, their attorney, Mr. Dawes, and Mr. Perlman. The offer was discussed in their hearing and presence. No one appeared to object to the approval of the settlement. Both Mr. Dawes, and Mr. Perlman acting as attorney for the trustee, urged the desirability of approval by the court of the offer and it was confirmed by the Referee.

Mr. Dawes testified that some time after the approval had been given and the order had been entered he learned from Mr. Perlman that as attorney for the plaintiffs in the Horvath suit against the bankrupt it would not be possible to give releases of the judgment obtained in that action by reason of "certain developments". Then, according to Mr. Dawes, the respondents decided that they would not pay the $700 because they were not going to get releases of the judgment of Horvath against the bankrupt and his father and brother.

This refusal continued in spite of the supplementary orders that were made upon the respondents to carry out their agreement. No appeal or review of the orders made by the Referee were sought by the respondents except that they contest his order that they show cause why they should not be held in contempt.

The Referee held that the offer could not be withdrawn even prior to confirmation (In re Lane Lumber Co., 9 Cir., 207 F. 762) and that in the light of their failure to introduce evidence as to their claim that the offer was not accurately submitted to creditors as they had made it and to review his order thereafter no dispute was suggested by them and his order remains a good and subsisting one. He declared inadmissible the testimony which was offered referring to matters before his order confirming the settlement was entered (Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419; Collier on Bankruptcy, 14th Ed., Vol. 1, p. 245), and made his certificate and order to show cause why the respondents should not be held in contempt by this court.

I believe that the Referee's action was justified in fact and in law. Adjudication that one has contemned an order of a court defines that which strikes at the very heart of the judicial system for failure to obey such an order made with propriety and unquestioned by appeal can start an organized society on its road to anarchy. Therefore, no judgment that so serious a dereliction as that contempt has been committed should be rendered prior to the fullest and fairest consideration of all the elements and factors which are concerned.

There is no question but what the respondents agreed to settle the suit brought against them by the trustee in bankruptcy for $700 to be paid by the bankrupt's wife.

However, the bankrupt claims entire immunity from these proceedings because he says that he, under no circumstances, was a party to the offer. His passivity, however, is in total inconsistence with his use of the pronoun "we" in his testimony as to what went on when he and his wife visited the office of Mr. Dawes and of their conversations with Messrs. Lenox, Kahn and Perlman. He was present before the Referee when the petition was heard, which described the offer allegedly coming from himself and his wife and he took no exception by way of review or appeal from the order that confirmed that offer or the one which directed the consummation thereof. The Chancery action involved him and his wife and he was a party to the offer to settle notwithstanding that it was his wife who was to put up the necessary funds.

Further, both respondents deny that the offer as approved by the court reflects their agreement. They point to Mrs. Rockhill's letter of withdrawal. This complained of two subjects. First, it took exception to the notice to creditors which the Referee had sent out because a reference is made to the suit in Chancery having as its subject matter allegedly fraudulent conveyances. Mrs. Rockhill insisted that the trustee issue a statement that the transfers were not fraudulent. Secondly, the letter contained a demand for practically a guarantee that her husband would be discharged in bankruptcy. Both demands were to say the least naive. Nowhere in the letter, however, is the slightest reference made to a demand for release of her husband and his brother, Edward, from the judgment in the Horvath case, or that the procuring of such was to have been a contingency upon which the offer was made. In fact there is no showing that there are judgments against the bankrupt's brother or father which could be released in any event. His schedules, filed for him by Mr. Dawes, show that James and Edward Rockhill, presumably the father and brother, signed a recognizance in the Horvath case and, if given its ordinary connotation, it means that they became but bondsmen that he

would abide the judgment of the court and not flee its jurisdiction.

In any event upon the return day of the notice to creditors made pursuant to the trustee's petition for the court's approval of the compromise, they and their counsel made no sign or sound that theirs was a double barreled offer requiring not only the discontinuance of the Chancery Court action by the trustee but independent releases and assurances from Mr. Perlman not as counsel to the trustee but as attorney for judgment creditors upon whose behalf, by the way, he had, early in the bankruptcy proceedings, filed objections to the bankrupt's discharge.

At some time after the approval order was entered there is no doubt that the respondents pressed their demands for the assurances that they well knew the trustee could not give, but this was after they had sat idly by watching the court approve an offer they say was incomplete in its terms and failing thereafter to ask for review of it or any other order the court based thereon. The Referee was right in deeming these conditions afterthoughts not to be permitted to affect the proposal which had received approval.

The respondents offered a check in evidence which was made out at the time of the conference in Mr. Dawes' office when he telephoned to Mr. Kahn. It is made to the order of Mr. Dawes in the sum of $750 and contains the notation, "In full settlement Kahn & Rockhill to be paid upon the receipt of proper releases". This check was never delivered and although the respondents point to it as important proof that they were to have releases from the plaintiffs in the Horvath suit in addition to the discontinuance of the Chancery Court action it is as ineffective and unconvincing as Mrs. Rockhill's letter.

Both the trustee and Mr. Perlman assert that there were no assurances given that releases would be delivered covering the judgment in the Horvath case and conversations concerning these, according to Mr. Perlman, did not take place with him until after the Referee's order following the creditors' meeting, when he found it impossible to procure such releases.

An order was entered in the Court of Chancery suit, on the consent of Mr. Dawes, some time prior to the creditors' meeting which recited that the matter had been settled subject to the approval of the Referee in Bankruptcy and ordered that the hearing in the matter should be continued without a day.

The respondents made an offer of payment by Mrs. Rockhill of $700 to compromise the suit of the trustee against them and later chose to annex conditions to be fulfilled by Mr. Perlman as attorney not for the trustee, but for judgment creditors. They permitted the court to remain uninformed of the annexed conditions until after its order was entered, and their continued failure to comply with its order brings them in contempt of it.

An order will be entered holding them in contempt of the order of Referee Weelans made on the 8th day of August 1944, directing them to pay the sum of $700 and interest according to the items therein stated. The order should provide that they may purge themselves of this contempt by complying with the said order not later than Monday, April 7, 1947 at 10 a. m., or appear before this court at that time for its further action in connection with their contempt.