[Civ. No. 32762. First Dist., Div. Two. Mar. 12, 1975.]

PAT MONTANDON, Plaintiff and Appellant, v.
COX BROADCASTING CORPORATION et al., Defendants and
Respondents.

## COUNSEL

Charles O. Morgan, Jr., for Plaintiff and Appellant.

Berry, Davis & McInerney, Phillip S. Berry, Miilu & Haney and R. Kevin Haney for Defendants and Respondents.

## OPINION

**BRAY, J.**\*—Plaintiff appeals from judgment of the San Francisco Superior Court in favor of defendants.

### QUESTION PRESENTED

Defendants are not legally responsible for the libelous changes made to their article by TV Guide.

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## RECORD

Plaintiff filed a complaint against Cox Broadcasting Corp., Pat Michaels and others for libel because of the publication in TV Guide of the article hereinafter described, submitted by the above-named defendants, but altered by the publishers of said magazine. Defendants answered the complaint and later moved for directed verdict. The trial court granted the motion and entered judgment in favor of defendants.[1]

## THE FACTS

Defendant Cox Broadcasting Corp. (hereinafter "Cox") is a corporation which operates KTVU Channel 2 in the San Francisco Bay Area. Triangle Publications, Inc. (hereinafter "Triangle") is a separately owned, managed, financed, and operated corporation which publishes TV Guide. Defendant Pat Michaels is an employee of Cox. For a Pat Michaels show to be produced later, a Cox employee issued a press release which read: *"FRIDAY, SEPTEMBER 20th, 10:30 P.M., 'PAT MICHAELS SHOW',* [¶] 'FROM PARTY-GIRL TO CALL-GIRL?' [¶] How far can the 'party-girl' go until she becomes a 'call-girl' is discussed with T-V personality Pat Montandon, author, ('How to be a Party-Girl') and a masked-anonymous prostitute!" This was sent to TV Guide for publication in a later edition. There the release was changed to read: "10:30 [2] PAT MICHAELS—discussion (color) [¶] 'From Party Girl to Call Girl.' Scheduled guest: TV Personality Pat Montandon and author of 'How to Be a Party Girl.' " It was so published in TV Guide.

Neither Cox, Michaels nor anyone else connected with Cox or KTVU either requested, authorized, knew of, or consented to any change in the news release. However, it was known to Cox personnel that Triangle might make changes in the release, but obviously no one knew that changes would be made of a sort to make the release libelous.

Miss Montandon was a television performer, authoress, lecturer and an outstanding public personality. Plaintiff claimed, and the jury in its verdict against TV Guide found, that the release as published would lead

---

[1]One of the other defendants is Triangle Publications, Inc., a corporation, doing business as TV Guide. It also moved for directed verdict, which motion was denied. The case was tried by a jury and a verdict of $150,000 compensatory and $1,000 punitive damages was rendered in favor of plaintiff and against Triangle. Defendant Triangle's appeal from the judgment thereon has this day been decided by this court. (*Montandon v. Triangle Publications, Inc., post,* p. 938 [120 Cal.Rptr. 186].)

the average reader to assume that Miss Montandon was the person who proceeded from being a party girl to being a call girl.

### DEFENDANTS ARE NOT LEGALLY RESPONSIBLE FOR THE LIBELOUS CHANGES MADE TO THEIR ARTICLE BY TV GUIDE

The sole issue as expressed by plaintiff is whether the trial court could say, as matter of law, that there was no evidence of sufficient substantiality to support the finding that defendants were not responsible for the publication of the article in the form in which it was published. It seems conceded by plaintiff that there was nothing in the article as drawn and sent to TV Guide that was in anywise libelous of plaintiff.

Apparently, plaintiff concedes that there was no "true technical agency relationship" between Triangle and Cox, but contends that the statement in section 215 of the Restatement Second of Agency: "A master or other principal who unintentionally authorizes conduct of a servant or other agent which constitutes a tort to a third person is subject to liability to such person," because of its reference to "other agent" implies a broader scope than the true technical agency relationship. Plaintiff offers no supporting authority for this contention. There is no such distinction. "[O]ther agent" in the Restatement refers to an agent in the ordinary and generally understood legal sense. To hold that one who submits a news item to a publisher for publication, knowing that the publisher may modify the item to meet the requirements of the medium in which it is to be printed, is to be held bound where the publisher sees fit to make a nonlibelous article libelous would make it unsafe for any person to submit any article for publication.

An author cannot be held liable for republication unless the original statement is defamatory. In *Washington Gas Light Company* v. *Lansden* (1899) 172 U.S. 534, 549 [43 L.Ed. 543, 550, 19 S.Ct. 296], the court said: "For anything appearing in that publication which was outside and beyond the scope of the subject-matter of the letters of Mr. Leetch, he would not be responsible, because he could not be charged with authorizing the publication of such matter in any form, . . ." Doctoring the release submitted to TV Guide so as to cause it to indicate that Miss Montandon was a prostitute is outside and beyond the scope of the subject matter submitted.

Defendant contends that applicable here is the quote from *Washington Gas Light Company* v. *Lansden, supra,* 534, 549-550 [43 L.Ed. 543, 550]:

"[B]ut if upon all the evidence on another trial the jury should be satisfied he furnished the publisher, Mr. Brown, with information of a libellous character regarding the plaintiff, for the purpose and with the intention of having the same published by Mr. Brown, we think that the defendant might be held liable for such publication on the ground that it was published by his aid and procurement and substantially by his agen' " Plaintiff's contention that defendant furnished the publisher with information of a "libelous character regarding the plaintiff" is untrue as the original statement in nowise is libelous. The quotation is not applicable to the facts in the case at bench but is important to show what is necessary before the author can be held for libel.

In *Marteney v. United Press Association* (10th Cir. 1955) 224 F.2d 714, 716, the trial court in a libel action refused to receive in evidence the headlines added by newspapers to a United Press news dispatch, which were not part of the original news story disseminated by the association. The court said: " 'It is the practice of some newspapers deliberately to put poison in a headline and follow it with a weak antidote in the body of the article.' A press association has no control over the headlines which a newspaper uses in connection with its press dispatches." Nor did defendants have any control over TV Guide in connection with changes made by it in releases sent to it by defendants.

In *Klos v. Zahorik* (1901) 113 Iowa 161, 166-167 [84 N.W. 1046, 1048], the court stated: "And it is too plain to require extended comment that, if the communication from defendant to the paper was in itself unobjectionable, then defendant could not be held liable for improper matter contained in the newspaper article, even though that article might have been to some extent instigated by or based upon defendant's communication." That is the precise situation in the instant case.

In *Haggard v. First Nat. Bank of Mandan* (1943) 72 N.D. 434 [8 N.W.2d 5], the same principle was applied to protect a deputy sheriff whose nondefamatory statement to a radio station in a request for a broadcast alert was garbled by the announcer making it defamatory.

In *Sakuma v. Zellerbach Paper Co.* (1938) 25 Cal.App.2d 309, 321 [77 P.2d 313], the court held that the business manager of a newspaper could not be held liable for a libel published in it because "It is not shown that his authority included any control over the editorial staff. . . ." In the instant case, neither defendant had any control over the staff of TV Guide any more than did the business manager in the quoted case.

In *Di Giorgio Corp.* v. *Valley Labor Citizen* (1968) 260 Cal.App.2d 268 [67 Cal.Rptr. 82], it was held that even an author of a libelous statement could not be held liable for punitive damages because of a later republication unless he "authorized, consented to, or participated" in the republication. It necessarily follows that the author of a nonlibelous statement cannot be held liable at all for its being changed into a libelous statement and so published unless he authorized, consented to, or participated in the publication of the article as changed. In the case at bench, the mere fact that the author knew that changes might be made in the wording of the article submitted does not justify a claim that he must know that the publisher might turn the article into a libelous one. The author has the right to assume that no such change will be made.

*Draper* v. *Hellman Com. T. & S. Bank* (1928) 203 Cal. 26 [263 P. 240], cited by plaintiff, is not in point. There the statement as made by the bank was a defamatory one. Moreover, the court held that the relationship of principal and agent existed between the bank and the forwarder of the libelous statement and that a principal can be held liable for defamatory torts of an agent committed within the scope of the agent's authority. There was no agency relationship between defendants and TV Guide.

Judgment affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied April 1, 1975, and appellant's petition for a hearing by the Supreme Court was denied May 8, 1975. Mosk, J., did not participate therein.